**PIONEER BANCORPORATION, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**Thomas A. WATERS, Defendant–Appellant.**

No. 86CA1177.

Colorado Court of Appeals, Div. III.

June 2, 1988.

Rehearing Denied June 30, 1988.

Certiorari Denied Nov. 28, 1988.

Holme, Roberts & Owen, Daniel S. Hoffman, Denver, for plaintiff-appellee.

Holt & Gebow, Thomas E. Gebow, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Thomas A. Waters, appeals from a judgment in favor of plaintiff, Pioneer Bancorporation, Inc., entered upon adoption by the district court of the report and appraisal of a master/appraiser appointed pursuant to C.R.C.P. 53. We affirm.

On January 9, 1978, plaintiff purchased nearly 98 percent of the stock of Colfax National Bank from defendant. Pursuant to the purchase agreement and its addendum, defendant was paid approximately $1.7 million in cash, which represented the book value of the bank stock at closing.

Defendant also agreed to carry back the amount of the purchase price in excess of the book value in the form of 17,706 shares of restricted, non-participating, non-convertible, non-voting preferred stock, with a stated par value of $100 per share. The defendant was to receive a one percent dividend on each share of stock for the first 12 years after its issuance; the dividend was then to increase to seven percent per year starting with the 13th year after closing. Each dividend payment was to be paid in January of the following year, *e.g.,* the dividend earned in 1979 was paid in 1980. In addition, starting with the 13th year after closing, defendant had the non-cumulative right to require plaintiff to redeem annually up to nine percent of the stock at its par value until all of the stock was re-acquired.

In September of 1984, plaintiff's directors approved the sale of all of the bank's stock and its real estate to a third party. The sale was subsequently consummated on February 8, 1985.

When defendant learned of the directors' decision, he demanded payment for his stock, pursuant to the "Colorado dissenter's rights statute," § 7–4–124(3), C.R.S. (1986 Repl.Vol. 3A). When plaintiff received defendant's demand, it brought an action for declaratory judgment, seeking a determination that defendant had no dissenter's rights or, in the alternative, a declaration of the fair value of the stock if defendant were found to have dissenter's rights.

Thereafter, the parties entered into a stipulation, waiving all issues except a request that the court determine the fair value of the stock as provided by § 7–4–124(8), C.R.S. (1986 Repl.Vol. 3A). The parties further stipulated that the district court had plenary and exclusive jurisdiction to determine the issue. The stipulation was then made an order of the court.

After filing additional pleadings and responses, the parties further stipulated to refer the issue to a master/appraiser for a report and determination of the fair value of defendant's stock. The stipulation provided that:

> "The parties stipulate pursuant to Rule 53(e)(4) that the findings of fact of the master appraiser shall be final, and only questions of law arising upon the report shall thereafter be considered by the Court."

After a two-day hearing, the master issued a written report and appraisal, which determined the fair value of the stock. This report was approved by and made an order of the district court, and this appeal followed.

## I.

■ Preliminarily, we reject plaintiff's contention that this appeal should be dismissed because defendant agreed, in the stipulation referring the case to the master/appraiser, to be bound by the findings of fact and thus is precluded from raising any issues of fact before this court.

The correctness of the application of findings of fact to the law is a question of law. *Masinton v. Dean,* 659 P.2d 50 (Colo. App.1982). Thus, this court has the power to review the judgment.

## II.

■ Defendant asserts that the master/appraiser erred in using a discounted cash flow method, rather than a par value

method, in determining the fair value of defendant's stock. We find no error.

The dissenter's right statute defines "fair value" as "the value of shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of such corporate action, unless such exclusion would be inequitable." Section 7-4-124(1)(c), C.R.S. (1986 Repl.Vol. 3A). No Colorado cases have construed the term "fair value" in this context. However, the statutory definition was adopted, substantially without modification, from the Model Business Corporation Act § 81(a)(3) (1978). *See* Colo. Sess.Laws 1981, ch. 75, § 21 at 411. In the absence of any legislative history to the contrary, we assume that the General Assembly adopted the statutory definition of "fair value" with knowledge of the substantial body of case law which had interpreted the term as it was used in similar dissenters' rights statutes in other states. *See* §§ 2-4-201 and 2-4-203, C.R.S. (1986 Repl.Vol. 1B).

Among other jurisdictions with valuation statutes similar to our own, there is a consensus that a proper determination of fair value depends upon the particular circumstances of the corporation involved. The court must consider all relevant value factors, including market value, investment or earnings value, and net asset value. *See Richardson v. Palmer Broadcasting Co.*, 353 N.W.2d 374 (Iowa 1984); *In re Valuation of Common Stock of Libby*, 406 A.2d 54 (Me.1979); *Phelps v. Watson–Stillman Co.*, 365 Mo. 1124, 293 S.W.2d 429 (1956). *See generally* 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7165.4 (1983 rev. vol.); Annot., 48 A.L. R.3d 430 (1973).

▮ A judicial determination of fair value is not susceptible to analysis by any precise mathematical formula. *Flarsheim v. Twenty Five Thirty Two Broadway Corp.*, 432 S.W.2d 245 (Mo.1968). Certain approaches to valuation may not present a reliable measure of value in a particular case. *Richardson v. Palmer Broadcasting Co., supra.* Thus, the weight to be assigned to each value factor depends upon the facts and circumstances of each case, and the court may properly decide to assign little or no weight to a factor it determines to be unreliable. *In re Valuation of Common Stock of Libby, supra.*

Our review of the record persuades us that the master/appraiser took into account all relevant factors in determining the fair value of defendant's stock. The master/appraiser specifically reviewed and rejected defendant's expert testimony equating fair value to par value as incorrect, unpersuasive, and not credible. Examining the various characteristics of the stock in this case, *i.e.*, a debt-like instrument with a 23–year life, limited specfic dividend rates, and provisions which make the stock non-voting, non-participating, and give no preference upon liquidation, the master/appraiser found that application of a par value methodology ignored all of these characteristics. He further noted that the Federal Reserve order approving the 1978 sale "expressly recognized the 'debt-like' characteristics of the preferred stock and allowed the preferred stock to serve as 'additional financing' for the acquistion of the Bank."

The master/appraiser also rejected testimony equating fair value to fair market value because there were no comparable sales of the stock upon which to determine fair market value.

Finally, the master/appraiser considered the lack of marketability, liquidity, and the nominal dividend rate (*i.e.* one percent) of the preferred stock for the next seven years, and concluded that the stock had no discernible investment value.

The master/appraiser found that the discounted cash flow method constituted the only appropriate method to determine the value of this unique preferred stock. These findings, which were adopted and approved by the trial court, are amply supported by the record, correctly apply the relevant law, and will not be disturbed on appeal. *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979); *see Brown v. Brown*, 161 Colo. 409, 422 P.2d 634 (1967).

### III.

Plaintiff has requested attorney fees on the basis that this appeal is frivolous. Because this case presents issues of first impression, we do not deem it appropriate to award attorney fees.

The judgment is affirmed.

STERNBERG and HUME, JJ., concur.